# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10 C 3871 |
| | ) | |
| KANELAND COMMUNITY UNIT SCHOOL DISTRICT #302, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

Plaintiff Richard Scott (Scott) was allegedly employed by Defendant Kaneland Community Unit School District #302 (District) as a tenured teacher at McDole Elementary School (McDole). Defendant Dr. Jeffrey Schuler (Schuler) was allegedly the Assistant Superintendent of the District, and Defendant Dr. Charles

1

McCormick (McCormick) was allegedly the Superintendent of the District. Scott claims that he has been diagnosed with "severe ADD and major depression." (SA Compl. Par. 12). Defendant Martne McCoy (McCoy) allegedly became the Assistant Principal at McDole, and McCoy allegedly began lowering Scott's performance evaluation scores. In 2008, McCoy allegedly became the Principal of McDole. McCoy allegedly continued to give Scott low performance review scores, placed Scott on several remediation plans, and criticized Scott's teaching performance. Scott claims that he told McCoy, Schuler, and McCormick that the criticisms of his teaching were "exacerbating [Scott's] emotional distress." (SA Compl. Par. 25). Scott allegedly requested to be transferred to a school where McCoy would not be his supervisor as an accommodation for Scott's alleged disability. Defendants allegedly refused the request and, as a result, Scott's depression was allegedly exacerbated to the extent that he required medical treatment and multiple leaves of absence from work. Scott was allegedly on medical leave of absence from work due to his alleged disability from February 2010 to May 2010, and from August 2010 to October 2010. In October 2010, Defendant Board of Education for Kaneland Community Unit School District #302 (Board) allegedly voted to terminate Scott's employment.

      Scott includes in his second amended complaint claims alleging disability

discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.* (Count I), claims alleging discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (Count II), ADA retaliation claims (Count III), Rehabilitation Act retaliation claims (Count IV), and a declaratory judgment claim. On November 7, 2011, the court granted Defendants' motion to dismiss the declaratory judgment claim. Defendants now move for summary judgment on all remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In

ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Failure to Accommodate Claims

Defendants contend that Scott has not pointed to sufficient evidence to support his failure to accommodate claims. For a failure to accommodate claim brought under the ADA or the Rehabilitation Act, a plaintiff must establish: (1) that "[]he is a 'qualified individual with a disability,'" (2) that "the defendant was aware of h[is] disability," and (3) that "the defendant failed to reasonably accommodate h[is] disability." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010)(quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 n.2 (7th Cir. 2005)); *see also Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671-72 (7th Cir. 2012)(stating that for a failure to accommodate claim the a same standard is applied under the ADA and the Rehabilitation Act, "except that the Rehabilitation Act includes as an additional

4

element the receipt of federal funds"); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995)(stating that "the ADA and the Rehabilitation Act have the same standards").

### A. Individual with Disability

Defendants contend that Scott has not pointed to sufficient evidence to show that he is disabled under the ADA or the Rehabilitation Act. A disability under the ADA or the Rehabilitation Act is defined as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2), "a record of such an impairment," or (3) "being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1); *see also Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002)(explaining that the definition of a disability is the same under the ADA and the Rehabilitation Act). Scott contends that he can satisfy all three definitions for a disability. (Ans. SJ 9).

#### 1. Limitation on Major Life Activities

Defendants argue that there is not sufficient evidence showing that Scott was substantially limited in a major life activity. The ADA provides the following in regard to major life activities: "major life activities include, but are not limited to,

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Scott contends that he has various mental impairments that substantially limit his major life activity of working. (Ans. SJ 9). In order to show that the major life activity of working is substantially impaired, a plaintiff must establish "that the impairment 'significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes.'" *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009)(quoting *Skorup v. Modern Door Corp.,* 153 F.3d 512, 514 (7th Cir. 1998)). In the instant action, although Scott contends that he was temporarily unable to perform his job, the Seventh Circuit has made clear that "[t]o be substantially limited in one's ability to work, one must be significantly restricted in the ability to perform more than just a single job or the particular job that one held before he acquired a disability." *Steffen v. Donahoe*, 680 F.3d 738, 745 n.5 (7th Cir. 2012)(noting that the plaintiff "was not precluded from performing a broad range or an entire class of jobs"). Scott has failed to point to sufficient evidence to allow a reasonable trier of fact to conclude that he was unable to perform a class of jobs or a broad range of jobs, and the undisputed facts in this case actually indicate otherwise. For example, Scott admits: (1) that while working "he did not have a problem or any

difficulty as a result of his ADD in providing answers or responding to persons other than McCoy," (R SF Par. 39), (2) that his "ADD never caused a problem while working with any administrator other than McCoy," (R SF Par. 50), (3) that his "ADD never inhibited him in "following guidelines being issued by any administrator in the District other than McCoy," (R SF Par. 45, 51), and (4) that his "conditions of ADD and depression do not affect him in his daily life in serious ways." (R SF Par. 42). Scott also admits that although he claims to have required a tape recorder "to record conversations with McCoy because of his ADD," Scott had no such need when conversing with persons other than McCoy. (R SF Par. 40). As the plaintiff asserting that he is substantially limited in the major life activity of work, Scott was required to point to sufficient evidence "of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs . . . from which an individual would be excluded because of an impairment." *Peters v. City of Mauston*, 311 F.3d 835, 843-44 (7th Cir. 2002)(quoting *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001)(internal quotations omitted). Not only do the undisputed facts in this case indicate that Scott was not excluded from a class of jobs or a broad range of jobs, the undisputed facts show that Scott was able to perform the very same teaching job he performed at McDole as long as he worked under another supervisor.

In addition, Scott's own psychiatrist, Dr. Golewale (Golewale) indicated at his deposition that Scott is able to work as a school teacher. Golewale agreed that Scott could be a teacher despite his impairments, just "not in the current school district." (Gole Dep. 133-34). Golewale also stated that Scott had related to him that Scott was upset by McCoy's supervision and that Scott believed that his efforts to satisfy McCoy's standards "were never good enough." (Gole Dep. 115). Thus, the undisputed evidence does not indicate that Scott was excluded from a job in a broad range or an entire class of jobs because of his impairments. The undisputed evidence shows that Scott's desire for another position was based upon his dissatisfaction with his supervisor, rather than on any impairment that prevented him from working as a teacher. In addition, Golewale indicated that Scott was considering taking up private tutoring as a job, which indicates that Scott was able to work within the broad range of jobs that involved teaching. (Gole Dep. 71). Scott has thus failed to point to sufficient evidence to show that he was substantially limited in a major life activity.

In addition, Scott makes references in his response to the instant motion to a "temporary disability." (Ans. 5). To the extent that Scott contends that he was temporarily disabled at times during episodes of severe depression and was unable to do any work as any type of teacher during those periods, the undisputed evidence shows that Scott was not a qualified individual and was unable to perform the

8

essential functions of his job during those periods as required under the ADA. Thus, even if Scott were deemed disabled during those periods, he would not be deemed a qualified individual with a disability during those periods. *See Winsley*, 563 F.3d at 603 (stating that to prevail on a failure to accommodate claim, a plaintiff must show that he is disabled and "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"). Defendants also correctly point out that based on the undisputed facts in this case, Scott in general failed to meet the essential attendance requirements for his job.

### 2. Regarded As Disabled

Defendants argue that there is not sufficient evidence to show that Defendants regarded Scott as disabled in the major life activity of work. The Seventh Circuit has made clear that "[i]f the employee contends he was regarded as substantially impaired in the major life activity of working, he must present evidence from which it could be inferred that the employer regarded him as facing restrictions that would be significant enough to restrict his ability to meet the requirements of a substantial class of other jobs, beyond his current job." *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 196 (7th Cir. 2011). In the instant action, Scott merely presents evidence regarding Defendants' alleged awareness of certain claimed mental impairments,

requests for accommodations, and absences, which is insufficient to support a "regarded as" claim in this case. *Id.* at 195 (stating that "[t]o have been regarded as substantially limited in his ability to work under the law in effect at the relevant time, [the plaintiff] must come forward with evidence that [the employer] regarded him as limited in his ability to perform not merely one particular job but a class or broad range of jobs"). Therefore, Scott has failed to point to sufficient evidence to succeed on a "regarded as" claim.

### 3. Record of a Disability

Defendants argue that there is not sufficient evidence to show that Scott had a record of a disability. For a record of a disability claim, a plaintiff must have actually previously had a "'physical impairment that substantially limits one or more major life activities.'" *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 556-57 (7th Cir. 2011)(quoting 29 C.F.R. § 1630.2(k)). Since, as indicated above, the undisputed facts do not indicate that Scott was substantially limited in a major life activity, the record of a disability claim cannot succeed. *See, e.g., id.* (indicating that if there was no actual substantial limitation to begin with, there cannot be a "record of" claim). Thus, based on the above, no reasonable trier of fact could conclude that Scott was disabled under the ADA.

### 4. Estoppel

Scott argues that Defendants are estopped from taking the position that he is not disabled because Scott was deemed to have a "permanent disability" under a Board policy. Board Policy 5.180 provided in part that "[a]fter 90 consecutive work days of illness . . . such illness . . . shall be considered a permanent disability and the Board of Education may begin dismissal proceedings. . . ." (D Ex. 7). Board Policy 5.180 addresses an attendance policy and when dismissal proceedings can begin, whereas the ADA provides a definition to determine what individuals are protected by the ADA and cannot be subjected to discrimination. The verbiage used in Board Policy 5.180 does not resemble in any way the definition of a disability provided in the ADA, which is discussed above. Finally, the definition of a disability under the ADA has been limited to the ADA context. *See, e.g., Weiler*, 101 F.3d at 524 (stating that the definition of a "qualified individual with a disability" under the ADA "is unique to" the ADA); *Weigel v. Target Stores*, 122 F.3d 461, 466 (7th Cir. 1997)(stating that the fact that an individual qualified as disabled for Social Security benefits did not necessarily mean he was disabled under the ADA). The mere fact that Scott may have been deemed by the Board to satisfy the Board's criteria for a "permanent disability" under Board Policy for the purpose of possible dismissal

proceeding does not mean that the Board deemed Scott to meet all the special requirements under the ADA to meet the definition of a "disability." Therefore, Scott has not shown that Defendants are estopped from asserting that Scott is not disabled.

### B. *Per Se* Violation

Scott argues that Defendants recognized him as disabled under Board Policy 5.180, and that there was a *per se* violation of the ADA or the Rehabilitation Act by such recognition by the Board. To establish a *per se* violation of the ADA or the Rehabilitation Act based on an employer's policy, the plaintiff must establish that he was disabled under the ADA or the Rehabilitation Act. As indicated above, even if the Board classified Scott as having a "permanent disability" due to Scott's absences under Board Policy 5.180, for the Board to consider possible dismissal proceedings, that does not necessarily mean that he met the requirements for a disability under the ADA or the Rehabilitation Act. In addition, as indicated above, the undisputed evidence in this case indicates that Scott was not disabled under the ADA or the Rehabilitation Act. Therefore, Scott has not pointed to sufficient evidence of a *per se* violation of the ADA or the Rehabilitation Act.

C. Reasonable Accommodation

Defendants also contend that Scott has not pointed to sufficient evidence to show that Defendants failed to provide Scott with a reasonable accommodation. The Court initially notes that since there is not sufficient evidence that Scott was disabled, he was not entitled to a reasonable accommodation. *See Larimer v. International Business Machines Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)(indicating that "right to an accommodation" is "limited to disabled employees"); *see also Jaros*, 684 F.3d at 672 (stating that "[r]efusing to make reasonable accommodations is tantamount to denying access," and that "although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally"). Scott claims that a transfer to an alternative position or alternative work site would have been a reasonable accommodation. (Ans. SJ 10). However, as Scott makes clear in his second amended complaint and based upon the undisputed facts in this case, Scott's real requested accommodation was to have a new supervisor. The undisputed facts indicate that Scott's situation would not have been altered if he were placed in a new job at another school, if McCoy continued to be his supervisor. The Seventh Circuit has indicated that in a situation when "the plaintiff allege[s] that working with a particular supervisor caused h[im] stress, which in turn led to [disorders] . . . and disabling depression and

13

anxiety, . . . an accommodation to be assigned to work with a different supervisor" is not a reasonable accommodation. *Bradford v. City of Chicago*, 2005 WL 103058, at *2 (7th Cir. 2005)(unpublished)(citing *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996)). The Seventh Circuit has stated that "the choice of a supervisor belongs to the employer, not the employee." *Bradford*, 2005 WL 103058 at *2 (stating that "a transfer away from particular supervisors or co-workers is not required as a 'reasonable accommodation' under the ADA"). In this case, Scott was not entitled to demand a new supervisor under the ADA or the Rehabilitation Act, and Scott has failed to point to sufficient evidence to show that Defendants failed to provide him with a reasonable accommodation when they declined to move Scott to a position with a different supervisor. Based on the above, Defendants' motion for summary judgment on the failure to accommodate claims is granted.

II. Retaliation Claims

Defendants argue that Scott has not pointed to sufficient evidence for his retaliation claims. A plaintiff seeking to defeat a defendant's motion for summary judgment on an ADA or Rehabilitation Act retaliation claim can proceed under the direct or indirect method of proof. *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Under the direct method

14

of proof, a plaintiff must show through direct or circumstantial evidence: (1) that "he engaged in a statutorily protected activity," (2) that "he suffered an adverse action," and (3) that there exists "a causal connection between the two." *Id.* Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: (1) that he "engaged in protected activity," (2) that he "was performing his job satisfactorily," and (3) that he "was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Id.* If the plaintiff establishes a *prima facie* case, "the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action," and "[i]f the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason was pretextual." *Id.*

Scott does not indicate which method of proof he can prevail under, stating only that the "totality of the facts lead to a reasonable inference from which a rational jury could find that there was retaliation," and that whether he was retaliated against in violation of the ADA and the Rehabilitation Act "is for a jury to decide. . . ." (Ans. SJ 12-13). In regard to the direct method of proof, Scott has failed to point to evidence indicating a causal connection between actions by Defendants and any protected activity by Scott. Scott contends that Defendants went on a "campaign to get [Scott] fired," (Ans. 12), but Scott has failed to point to sufficient evidence to

15

support such a conclusion or to show that any of the actions by Defendants related to Scott's attempt to assert his rights under the ADA and the Rehabilitation Act. *See, e.g., Feldman v. Olin Corp.*, 2012 WL 3641774, at *7 (7th Cir. 2012)(concluding that there was no genuine dispute as to causation and concluding that the evidence "suggest[ed] that [the employer] was strictly applying its overtime and flex-time requirements, not that [the employer] was retaliating against [the plaintiff] for filing charges of discrimination"). Scott also argues that Defendants' refusal to exercise their discretion to allow Scott to have a "discretionary indeterminate leave of absence" shows that Defendants intended to retaliate against Scott. (Ans. 12-13). However, the undisputed evidence shows that Scott has no evidence that Defendants ever permitted any teacher leave of absence for an unspecified time. (R SF Par. 73). Scott has failed to point to evidence to tie Defendants' discretionary decision to Scott's protected activity.

In addition, under the indirect method of proof, Scott has failed to show that similarly situated individuals were treated more favorably. Scott has failed to point to comparators that received better treatment than Scott. (R SF Par. 75). Nor has Scott pointed to sufficient evidence to show that Defendants' given reason for their actions was a pretext. The fact that Defendants may not have granted Scott a discretionary indefinite leave of absence when there is no evidence that Defendants

granted such relief in the past to any other teacher does not suffice to indicate a pretext for unlawful retaliation. The undisputed facts indicate that Defendants had an attendance policy in place, and that Scott's employment was terminated for failing to comply with the attendance requirements. Therefore, based on the above, Defendants' motion for summary judgment on the retaliation claims is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 31, 2012